**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Katharine M. DUGHI, Treasurer of Orange County in the State of New York, State of New York, County of Orange in the State of New York, Town of New Windsor in the State of New York, Defendants.**

United States District Court
S. D. New York.

Jan. 13, 1960.

S. Hazard Gillespie, Jr., U. S. Atty., S. D. of New York, New York City, for plaintiff.

John W. Hasson, Asst. U. S. Atty., Woodside, N. Y., of counsel.

Thomas R. Hadaway, Goshen, N. Y., for defendants Dughi and County of Orange.

Sweeny, Maharay & Ewing, Newburgh, N. Y., for defendant Town of New Windsor.

Louis J. Lefkowitz, Atty. Gen., for defendant State of New York.

METZNER, District Judge.

The United States of America has brought an action against Katharine M. Dughi, County Treasurer of Orange County in New York State, and other local taxing authorities, in which it seeks an injunction against the sale of its land for unpaid taxes, a declaration that the

taxes assessed by the defendants are null and void and a cancellation of them, and the striking of the Government's property from the tax rolls. A preliminary injunction was granted by Judge Dawson (United States v. Dally, D.C., 165 F.Supp. 194) on September 8, 1958. The Government now moves for summary judgment on the ground that there is no genuine issue as to any material fact.

 The property is situated on a military installation known as the Stewart Air Force Base in the Town of New Windsor, County of Orange, State of New York. The property is devoted to a Wherry Military Housing project (Title VIII of the National Housing Act, 12 U.S.C.A. §§ 1748–1748h; Military Leasing Act of 1947, 10 U.S.C. § 2667) which resulted from a lease by the Secretary of the Air Force to the Dayton Development Corp. The lease was made "for the purpose of erecting, maintaining and operating a housing project" and was for a period of 75 years with a rental of $100 a year. Under the lease, 284 apartments were to be constructed and as each building was completed title passed to the Government, although it remained under lease to Dayton. Paragraph 11, around which the controversy in this case centers, states:

"11. That the buildings and other improvements erected by the Lessee, constituting the aforesaid housing project shall be and become, as completed, real estate and part of the leased premises, and property of the United States, leased to Lessee to effectuate the purposes of Title VIII of the National Housing Act * * *."

The construction was completed by March, 1955, and thereafter Dayton retained only a leasehold interest in the property under the lease. This interest of Dayton existed until October 29, 1957, when Dayton assigned its interest to the Zuckerman brothers, who in turn assigned the lease back to the plaintiff on October 30, 1957, giving it all the interests in the property after that date. In the latter part of 1956 the Town of New Windsor placed the property, under the name of Dayton Development Corp., upon the assessment rolls for $750,000 and the Board of Supervisors of Orange County levied state, county and town taxes based on such assessment. The assessment was levied against the buildings in the housing project, title to which, under the lease, had passed to the Government 21 months before upon the completion of the buildings. The taxes were not paid and the County Treasurer gave notice of tax sale.

Apparently the defendant in assessing the tax was relying on the decision in Offutt Housing Co. v. County of Sarpy, 1955, 351 U.S. 253, 76 S.Ct. 814, 100 L. Ed. 1151. That case held that the State of Nebraska could lawfully levy a personal property tax upon the lessee's interest in a Wherry project built under the same type of lease as is involved here and authorized by the same statutes. The court determined that there was no constitutional question since authorization for such taxation had been specifically conferred by Congress in the Military Leasing Act of 1947.

The question in the present case is not, therefore, whether the State of New York can lawfully impose a tax upon Dayton's interest but whether a taxable interest exists. The defendant admits that New York has no personal property tax analogous to the Nebraska tax in Offutt and cannot, therefore, tax Dayton's leasehold interest, which is a chattel real and personal property, and not taxable as real property under New York law. Fort Hamilton Manor, Inc. v. Boyland, 1958, 4 N.Y.2d 192, 173 N.Y.S.2d 560, 149 N.E. 2d 856. But defendant contends that "in fact" the interest of Dayton in the buildings was an ownership interest because the provisions in the lease vesting title in the Government upon completion of the buildings were inserted solely as a tax avoidance scheme. It, therefore, asserts that the buildings, being Dayton's and not the Government's, are taxable under § 3 of the New York Tax Law (59 McKinney's Consol.Laws § 3) as real property not exempt from taxation by

law. It points to the definition of real property in § 2, subd. 6 of the New York Tax Law, which states:

"The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include * * * all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same [land] * * *."

It has been held in New York that buildings or other improvements on leased tax-exempt land are taxable where they are removable under the terms of the lease. Fort Hamilton Manor, Inc. v. Boyland, supra. That case also involved a Wherry Military Housing project which was situated on the Fort Hamilton Military Reservation in Brooklyn, New York, owned by the United States of America. The lease differed from the instant one in that it provided that title to improvements constructed on the demised premises remained in the lessee during the term of the lease. If the improvements were not removed by the end of the lease, they become the property of the Government.

It has been held that where by the terms of the lease there is no such right of removal in the lessee he has no interest that can be taxed as real property. People ex rel. International Nav. Co. v. Barker, 1897, 153 N.Y. 98, 47 N.E. 46. In People ex rel. Hudson River Day Line v. Franck, 1931, 257 N.Y. 69, 177 N.E. 312, the Court of Appeals discussed the exception created by the New York Tax Law to the common law rule that structures built on leased land, where removable by the builder, are personal property. It stated:

"The building is real estate assessable as such to the builder as its owner, while the land upon which it stands remains subject to assessment against the landowner * * *. However, such a case presents an exception, by force of the statute, to the ordinary rule, that, 'when structures are erected by persons not owners of the land, they become part of the realty, and as such the property

of the landowner.' * * * *To establish the exception, clear and explicit language must be employed, indicating with precision that the builder retains the right of removal and remains the owner. 'It requires an agreement to be expressed in order to prevent the operation of this rule.'"* (Italics added) 257 N.Y. at page 71, 177 N.E. at page 312.

Thus if the lease had been silent as to the ownership of the buildings they would have been the property of the lessor-owner of the land. People ex rel. International Nav. Co. v. Barker, supra. Since the defendant admits that the lease was entered into and simply contests the actual intention of the parties in inserting clause 11, it is difficult to see what facts the defendant could prove on trial to avoid the operation of the New York rule of law, even without considering the motives behind the clause. Certainly the defendant does not argue that the Government and Dayton were obligated to insert a clause expressly reserving the right of removal to the lessee and thus making Dayton's interest taxable under New York law.

■ Even if the question of the motives behind the existence of the clause were reached, the result would be the same. If tax avoidance was "a factor in the insertion of this clause, * * * the law does not prohibit businessmen from adopting lawful procedures to reduce their tax burdens." United States v. Dally, D.C.S.D.N.Y.1958, 165 F.Supp. 194, 196. (Judge Dawson's decision granting preliminary injunction). See also Commissioner v. Newman, 2 Cir., 1947, 159 F.2d 848, 850–851.

Defendant points to United States v. Woodworth, D.C.W.D.N.Y.1945, 60 F. Supp. 844 where a summary judgment was denied in an action to cancel taxes against lands claimed to be owned by the Government. There, however, the defendants alleged that the property was held in trust for the Reconstruction Finance Corporation since purchased with its funds and that the Secretary of Commerce had the duty as to some of the

lands to transfer title to the Reconstruction Finance Corporation. Here no allegation is made that the Government was under a duty to transfer title to Dayton under law or any legal instrument, nor that it held the buildings in trust for Dayton.

Finally, defendant points to language in Offutt Housing Co. v. County of Sarpy, supra [351 U.S. 253, 76 S.Ct. 819] where the Government's title was characterized as "only a paper title." It claims that, as in that case, it can prove on trial that the useful life of the buildings is less than the term of the lease and thus the full enjoyment was that of the lessee. However, the court was concerned with "ownership" only insofar as it was necessary to determine the value of the lessee's interest for assessment under a valid state tax on personal property. We don't reach that question here because all Dayton had by virtue of its lease was personal property for which there is no tax in this state. Similarly, in City of Detroit v. Murray Corp., 1955, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441; United States (Borg-Warner) v. City of Detroit, 1955, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed. 2d 424 and United States v. Township of Muskegon, 1955, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436, the court upheld taxes which were assessed against private parties for the use of Government property and levied on the basis of the value of that property. But that is not the case here. As the New York Court of Appeals stated in Fort Hamilton Manor, Inc. **v.** Boyland, supra:

> "Only the lessee's interest is permitted to be taxed by Federal law, even though under the Borg-Warner case * * * the value of the lessee's interest may be measured by the value of the fee * * *. The circumstance that our Legislature would be at liberty to tax this leasehold interest does not establish that it has done so * * *. The leasehold interest of appellant *has not been taxed,* since it is personal property and the New York State personal property tax has been repealed,

and, unlike Michigan, we have no special tax against leaseholds of exempt real estate." 4 N.Y.2d at page 198, 173 N.Y.S.2d at page 564, 149 N.E.2d at page 859.

The defendant also raises as an affirmative defense that 28 U.S.C. § 1341 withdraws jurisdiction from this court. This Circuit has made it plain that § 1341 does not apply to the Government. United States v. City of New York, 2 Cir., 1949, 175 F.2d 75, certiorari denied 338 U.S. 885, 70 S.Ct. 189, 94 L.Ed. 543; United States v. Woodworth, 2 Cir., 1948, 170 F.2d 1019. While it is true that in the City of New York case the court nevertheless vacated the injunction, the grounds upon which this was done was that the validity of the tax was not clear under the state court decisions. In this case the decisions in Fort Hamilton Manor, Inc. v. Boyland, supra; People ex rel. Hudson River Day Line v. Franck, supra, and People ex rel. International Nav. Co. v. Barker, supra, clearly indicate the invalidity of the assessments.

*Motion granted. Settle order.*